Filed 9/22/15  Lewings v. Chipotle Mexican Grill, Inc. CA2/2
Opinion following rehearing

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ASHANTE K. LEWINGS, | B255443 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC496628) |
| v. | **OPINION ON REHEARING** |
| CHIPOTLE MEXICAN GRILL, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Elihu M. Berle, Judge.  Affirmed in part, reversed in part, and remanded for further proceedings.

Knapp, Petersen & Clarke, Stephen M. Harris, Gwen Freeman and Kevin J. Stack for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Jason W. Kearnaghan, Daniel J. McQueen and Robert Mussig for Defendant and Respondent.

_____

Ashante K. Lewings (Lewings) appeals from the dismissal of her class action following the successful demurrer of Chipotle Mexican Grill, Inc. (Chipotle) to Lewings's third amended complaint (TAC). The primary issue is whether Chipotle violated Labor Code section 3751,[1] a statute which prohibits employers from receiving a contribution from an employee, directly or indirectly, to cover any part of the cost of workers' compensation. Here, as alleged, employees purchased nonslip shoes from a company called Shoes For Crews, and Shoes For Crews extended warranties to Chipotle to cover certain medical expenses in slip and fall related workers' compensation cases. The allegations show that Chipotle violated section 3751 because it knowingly received warranties financed by its employees and specifically designed to alleviate workers' compensation costs.

We conclude that a violation of section 3751 supports Lewings's fifth cause of action under Business and Professions Code section 17200 et seq. (UCL). Moreover, we conclude that Lewings's second, third, and fourth causes of action pursuant to sections 201/202, section 226, subdivision (a), and the Private Attorneys General Act of 2004 (PAGA) should have survived demurrer, and that any Labor Code violations also support the UCL allegations. Accordingly, we reverse the dismissal as to the second through fifth causes of action. As to the first cause of action for violation of section 3751, however, we affirm. Though the TAC alleges a violation of that statute, that statute does not give rise to a private right of action.[2]

### FACTS

The TAC asserted allegations on behalf of all nonexempt or hourly employees who worked for Chipotle in California in the four years preceding October 22, 2013. According to those allegations: A company named Shoes For Crews markets its nonslip

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

[2] On July 1, 2015, we issued our original opinion reversing the judgment in its entirety. Chipotle filed a petition for rehearing, and we requested an answer from Lewings. We granted the petition for rehearing.

2

shoes (SFC shoes) to employers by offering to reimburse them for thousands of dollars in workers' compensation related medical expenses if an employee is injured in a slip and fall while on the job.[3] Chipotle implemented a Shoes For Crews program in which employees were permitted to buy SFC shoes directly from Shoes For Crews or through a payroll deduction. This is considered a safety program or good safety practice by workers' compensation carriers. Based on its employees wearing SFC shoes, Chipotle obtained a reduction in its workers' compensation premiums. On two occasions, Chipotle deducted $30 to $40 from Lewings's wages. At one point, Shoes For Crews paid $25,000 to offset the cost of medical bills arising from injuries sustained by Chipotle employees.

As further alleged, when it implemented the Shoes For Crews program, Chipotle violated sections 3751 and 3752 by requiring employees to bear the cost of workers' compensation expenses, and, at the time an employee's job was terminated, Chipotle violated sections 201 and 202 by failing to reimburse the employee for the cost of SFC shoes. In addition, Chipotle violated section 226, subdivision (a)(1)-(9) by failing to issue complete and accurate wage statements to all of its employees. The class is entitled to civil penalties under PAGA. Finally, Chipotle's conduct violates the UCL.

---

[3] The TAC incorporates four exhibits by reference. Those exhibits, as alleged, are Shoes For Crews marketing materials. Lewings did not include those exhibits in the appellant's appendix. We note, however, that in connection with an opposition to a demurrer to the second amended complaint, Lewings submitted four exhibits regarding Shoes For Crews marketing materials, and those exhibits are part of the appellant's appendix. Presumably, they are the same exhibits that were attached to the TAC. For overall context of the case, we elucidate the following. Exhibit 1 set forth the Shoes For Crews $5,000 slip and fall warranty terms, which provided, in part, Shoes For Crews "hereby agrees to reimburse any Company participating in our SHOES FOR CREWS® Payroll Deduction Plan for any direct medical expenses paid by your workers comp Board relative to injuries sustained by employees of Company resulting from slip and fall accidents while wearing shoes purchased from SHOES FOR CREWS®[.]" Exhibit 3 contained an ad stating, in part, that when employees purchase SFC shoes, a company will decrease future insurance premiums. Regardless, we do not consider these exhibits in our analysis.

Chipotle demurred to the TAC, arguing that sections 3751 and 3752 do not prohibit safe workplace programs that are voluntary, nor do they prohibit third party warranty reimbursements. The cause of action arising under sections 201 and 202 is derivative of the cause of action arising under sections 3751 and 3752 and is therefore similarly deficient. The section 226, subdivision (a) cause of action relating to wage statements is uncertain because the TAC does not specify how Chipotle's wage statements were deficient. The PAGA and UCL causes of action fail because they are derivative of the first three causes of action, and those causes of action are not sufficiently stated. Also, a PAGA cause of action cannot be based on violations of sections 3751 and 3752.

The trial court sustained the demurrer without leave to amend. Lewings's action was dismissed.

This timely appeal followed.

## DISCUSSION

### I. Standard of Review.

When reviewing a dismissal following an order sustaining a demurrer, we use our independent judgment as to whether the causes of action at issue have been adequately stated as a matter of law. (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 740.) "We give the complaint a reasonable interpretation, assuming that all properly pleaded material facts are true, but not assuming the truth of contentions, deductions, or conclusions of law. [Citation.]" (*Ibid.*) Further, we must keep the following in mind: "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.)

### II. The Allegations in the TAC are Sufficient to Establish that Chipotle Violated Section 3751, Subdivision (a).

Liberally construed, the allegations in the TAC assert that Shoes For Crews offered to reimburse Chipotle for workers' compensation medical expenses if SFC shoes purchased by its employees failed to prevent a slip and fall resulting in injury, and that

4

Chipotle knowingly agreed to this arrangement. Essentially, Lewings alleged that Shoes For Crews extended warranties[4] to Chipotle, Chipotle accepted them, and that these warranties were funded by its employees. The issue is whether the allegations demonstrate a violation of section 3751, subdivision (a). The subdivision provides: "No employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the cost of compensation under this division. Violation of this subdivision is a misdemeanor." (§ 3751, subd. (a).)

When interpreting a statute, our task is to ascertain the intent of the enacting legislative body and honor that intent. (*Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 568.) We begin by examining the statutory language and give the words their ordinary and usual meaning. If the language is clear, we apply the clear meaning without further inquiry. (*Ibid.*) "Only if the language is ambiguous and susceptible of more than one reasonable meaning do we consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.]" (*Id.* at pp. 568–569.) Moreover, any provision in Division 4 of the Labor Code, which includes section 3751, "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.)

---

[4]     The alleged promises by Shoes For Crews could alternatively be labeled warranties or guarantees. We note that a common understanding of warranties is an agreement to provide restitution when a product fails. (See *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, 1486–1487 [discussing the Song-Beverly Consumer Warranty Act].) A guarantee can represent a promise to protect another person against a loss. (Merriam-Webster's Online Dictionary (2015) <http://www.merriam-webster.com/dictionary/guarantee> [as of Sept. 22, 2015].) For ease of reference, we call them warranties.

We must first decide whether the TAC adequately alleged that the warranties covered any part of "compensation" within the meaning of section 3751, subdivision (a). The answer is yes.

The word "compensation" in section 3751, subdivision (a) means compensation under Division 4 of the Labor Code, "and includes every benefit or payment conferred by [that] division upon an injured employee[.]" (§ 3207.) Section 4600, which appears in Division 4 of the Labor Code, provides that an employer must provide an injured worker with medical treatment that is "reasonably required to cure or relieve the injured worker from the effects of his or her injury[.]" (§ 4600, subd. (a).)

Any time Chipotle is self-insured, the warranties directly cover the cost of compensation by paying medical expenses. Any time Chipotle has workers' compensation insurance, the warranties indirectly cover the cost of compensation by defraying increases in insurance premiums and replacing lost dividends. (*Allied Interstate Inc. v. Sessions Payroll Management, Inc.* (2012) 203 Cal.App.4th 808, 818 [claims made by a company's employees correlate to an experience modification factor that is used when calculating the employers' workers' compensation insurance premium]; *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1426, fn. 2 [claims impact an insurer's reserves, which "directly affect the insured's premiums and dividends"].)

We must now determine whether the TAC adequately alleged that the employees contributed to the cost of compensation. Once again, the answer is yes.

According to Lewings, when the employees purchased SFC shoes, they indirectly contributed to the cost of compensation because their purchases resulted in Chipotle receiving warranties from Shoes For Crews designed to offset workers' compensation medical expenses. Based on the plain language of the statute, we agree. Undeniably, as we explained above, the warranties were designed to cover, to the extent specified, the cost of compensation. The plain meaning of the word "contribute" means "to give (something, such as money, goods, or time) to help a person, group, cause, or

6

organization,"[5] and a "contribution" refers to a "thing contributed."[6]  The plain meaning of the word "receive" means "to get or be given (something)."[7]  Because they were funded by employee purchases of SFC shoes, the warranties extended by Shoes For Crews for the sole benefit of Chipotle were contributions by the employees.  In addition, the Shoes For Crews warranties were given to the Chipotle by employees and therefore they were received by Chipotle.

As a counter, Chipotle contends that section 3751 cannot possibly be triggered because the SFC shoe purchases were voluntary.  It is impossible to square this argument with the plain language of the statute.  The statute outlaws three actions designed to cover the cost of compensation.  Those actions are:  (1) exacting a contribution from an employee; (2) receiving a contribution from an employee; and (3) deducting a contribution from the earnings of an employee.  Only the first action involves an involuntary payment because the word "exact" mean "to demand and get . . . especially by using force or threats."[8]  A contribution can be received or deducted by Chipotle regardless of whether it is voluntary or involuntary.

---

[5]      See Merriam-Webster's Online Dictionary (2015) <http://www.merriam-webster.com/dictionary/contribute> [as of Sept. 22, 2015].

[6]      See Merriam-Webster's Online Dictionary (2015) <http://www.merriam-webster.com/dictionary/contribution> [as of Sept. 22, 2015].

[7]      See Merriam-Webster's Online Dictionary (2015) <http://www.merriam-webster.com/dictionary/receive> [as of Sept. 22, 2015].

[8]      See Merriam-Webster's Online Dictionary (2015) <http://www.merriam-webster.com/dictionary/exact> [as of Sept. 22, 2015].

Next, Chipotle contends that Lewings does not have standing to sue because she failed to allege that she suffered a slip and fall, that she filed a workers' compensation claim, or that the one $25,000 payment made by Shoes For Crews had anything to do with her. Under scrutiny, this contention fails.

Our Supreme Court has explained that section 3751 "requires the employer to bear the entire cost of securing compensation. [Citations.]" (*Albillo v. Intermodal Container Services, Inc.* (2003) 114 Cal.App.4th 190, 201 (*Albillo*).) Thus, when Lewings and other Chipotle employees purchased SFC shoes, they secured at least part of the cost of compensation. Because Chipotle received contractual protection against medical expenses, rising premiums, etc., it does not matter whether any employees suffered slip and fall accidents triggering the warranties. Notably, Chipotle cites *Albillo* and concedes that it would be illegal for an employer to deduct wages from an employee to pay for the cost of workers' compensation insurance. We see no meaningful difference between deducting wages to pay for the cost of workers' compensation insurance versus receiving the warranties from Shoes For Crews. In both instances, Chipotle received protection from a third party. Moreover, it would be absurd to conclude that section 3751 is violated only if an employee suffers a slip and fall giving rise to a workers' compensation claim. That distinction finds no support in the statute. Finally, section 3202 requires us to liberally construe section 3751, and it would violate the spirit of the statutory scheme to afford Chipotle a windfall at the expense of its employees. There is no question that the warranties are a windfall to Chipotle.[9]

---

[9] The TAC was premised, in part, on section 3752. We need not discuss that statute because Lewings does not argue it on appeal.

8

In its petition for rehearing, Chipotle complains that our interpretation will create a trap for innocent employers because they could be criminally liable for receiving employee funded warranties they knew nothing about. Suffice it to say, this is not true. Criminal statutes generally require "'some form of guilty intent, knowledge, or criminal negligence,'" (*People v. Valenzuela* (2001) 92 Cal.App.4th 768, 773), and we do not construe the statute as containing the language of strict liability (*People v. Travers* (1975) 52 Cal.App.3d 111, 115). Thus, we easily conclude that section 3751 requires knowing conduct on an employer's behalf, and therefore it is not a trap for the unwary. Here, the TAC sufficiently shows that Chipotle knowingly and intentionally accepted warranties funded by its employees.

## III. The First Cause of Action Fails Because Section 3751 does not Support a Private Right of Action.

Having concluded that the TAC alleges a violation of section 3751, we turn to whether the violation is actionable. This issue was not argued in connection with Chipotle's demurrer to the TAC. However, "'As to general demurrers, "the demurrant is not limited to the reasons and arguments [it] advanced below, but is entitled to present to the appellate court any and all reasons whereunder the demurrer is properly sustainable." [Citations.]' [Citation.]" (*Memorial Hosp. of So. Cal. v. State Health Planning Council* (1972) 28 Cal.App.3d 167, 174.)

A private right action under section 3751 was acknowledged but not analyzed in *Ralphs Grocery Co. v. Superior Court* (2003) 112 Cal.App.4th 1090, 1102–1103, fn. 7 (*Ralphs*), overruled on other grounds in *Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217. The question is whether we should follow the lead of *Ralphs*. In her reply brief, Lewings urges yes. In its petition for rehearing, Chipotle urges no. We conclude that because *Ralphs* did not specifically decide the private right of action issue, we must determine it ourselves.

"Adoption of a regulatory statute does not automatically create a private right to sue for damages resulting from violations of the statute.  Such a private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature *intended* to create such a right to sue for damages.  If the Legislature intends to create a private cause of action, we generally assume it will do so '"directly[,] . . . in clear,  understandable, unmistakable terms . . . ." [Citation.]' [Citations.]" (*Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 62–63.)  "[W]hen neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion."  (*Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 133.)

Here, there is no indication in the statute that the Legislature intended to allow employees wronged under section 3751 to seek damages.  Neither party has submitted legislative history on the topic.  Consequently, we conclude that section 3751 does not give rise to a private right of action.

**IV.  The Second, Third, Fourth and Fifth Causes of Action Survive Chipotle's Argument that there was No Violation of Section 3751.**

The remaining causes of action are:  the second cause of action for violation of sections 201[10] and 202;[11] the third cause of action for violation of section 226,

---

[10]     Section 201, subdivision (a) provides, in part:  "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

[11]     Section 202, subdivision (a) provides:  "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.  Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address.  The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of the notice of quitting."

subdivision (a); [12] the fourth cause of action for penalties under PAGA;[13] and the fifth cause of action under the UCL.[14]

Chipotle contends that these causes of action fail because they depend on a violation of section 3751 and the TAC failed to properly alleged such a violation. This contention lacks merit. As we explained in part II of the Discussion, *ante*, a violation of section 3751 was sufficiently alleged.

Moreover, Lewings can still proceed under the UCL for a violation of section 3751. The UCL allows redress of unlawful business practices "whether or not the underlying statute was privately enforceable. [Citation.]" (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 387.) The only exception is when the Legislature intended to foreclose suit under other statutes. (*Ibid.*) Thus, section 3751 remains a viable component of Lewings's action.

## V. The Third Cause of Action (Violation of § 226, Subd. (a)) Survives Chipotles' Attack on its Overall Legal Sufficiency.

Below, as to the third cause of action, Chipotle asserted a special demurrer for uncertainty under Code of Civil Procedure section 430.10, subdivision (f). The trial court, however, treated it as a general demurrer attacking the sufficiency of the allegations, and concluded that the third cause of action was defective solely because it

---

[12] Section 226, subdivision (a) provides that when paying an employee, every employer shall furnish an accurate statement in writing showing a list of items such as total hours worked by the employee.

[13] When the Labor Code provides for a civil penalty, section 2699 permits an employee to seek the penalty in a civil action brought pursuant to the procedure in section 2699.3. Section 2699.5 provides that section 2699.3 applies, inter alia, "to any alleged violation" of sections 201, 202 and 226, subdivision (a). Section 3751 is not among statutes listed in section 2699.5.

[14] Business and Professions Code section 17203 provides: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. . . . Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, . . ."

11

was derivative of a defective section 3751 cause of action. By not objecting below, Lewings waived any challenge to the trial court's reliance upon a ground for demurrer not raised by Chipotle.

It is apparent that when the trial court ruled, it determined that there was no violation of section 3751. But, as we have explained in part II of the Discussion, *ante*, the TAC shows a violation of section 3751. Consequently, the trial court should not have dismissed the third cause of action on the stated grounds.

In defense of the trial court's ruling, Chipotle raises a new argument. It contends that violations of section 3751 do not support a cause of action under section 226, subdivision (a). According to Chipotle, this is because section 226, subdivision (a) is not violated if an employer reports an unlawful deduction on a paystub. In our view, this argument is waived because Chipotle did not raise it below. Regardless, this is a straw man argument because the third cause of action is not premised on Chipotle reporting unlawful deductions.[15]

In any event, the TAC alleged that Chipotle issued paystubs that failed to set forth the information required by section 226, subdivisions (a)(1) through (9). That statute provides: "(1) gross wages earned, (2) total hours worked by the employee . . . , (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions . . . , (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number

---

[15]    In an effort to establish that the third cause of action in the TAC is based on the reporting of unlawful deductions, Chipotle cites the following statement in Lewings's opposition to the demurrer to the second amended complaint: "Chipotle has violated Section 226 by failing to accurately report the items unlawfully deducted as gross wages, by failing to accurately report the net wages which should have been paid to employees, by failing to report the correct hourly rates of employee pay, and by committing other similar violations." Because this argument is not an allegation in the TAC, it does not factor into our analysis. Also, Lewings apparently relies on more than simply the reporting of unlawful deductions.

12

other than a social security number, (8) the name and address of the legal entity that is the employer . . . , and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee[.]" (§ 226, subd. (a)(1)-(9).) Chipotle offers no explanation for why these alleged deficiencies, which we must accept as true on demurrer, fail to support the third cause of action.

On appeal, Chipotle does not argue that the third cause of action was uncertain. Any issue regarding uncertainty is moot.

## VI. The Fourth Cause of Action (Civil Penalties Under PAGA) Survives Chipotles' Attack on its Overall Legal Sufficiency.

Chipotle points out that a PAGA cause of action cannot be based on a violation of section 3751. (§§ 2699, 2699.3, 2699.5.) While that is true, it is a moot point because the PAGA cause of action is based on violations of sections 201, 202 and 226, subdivision (a), which is permissible. (§ 2699.5.)

Nonetheless, Chipotle argues: "[Lewings concedes] that her PAGA claim is based solely on alleged violations of Labor Code sections 3751 and 3752." The problem is that Lewings never made such a concession. Rather, on the page in the opening brief pinpointed by Chipotle as proof of a concession, Lewings merely stated: "Chipotle argues that all the derivative claims in the action, which are derivative of section[] 3751, are defective since Lewings has not stated a viable claim for relief based on this statute. Wrong. As Lewings demonstrate[d] . . . , she has set forth a viable theory of recovery premised upon Section 3751. [Citation.] Chipotle's challenges to the second through fifth claims on this ground are thus without merit since there is a viable claim for relief based on Section 3751." Thus, Lewings never conceded that the PAGA cause of action is based on violations of sections 3751 and 3752 but not violations of sections 201, 202 and 226, subdivision (a).

13

Next, in a turnaround that cuts against Chipotle's argument in the preceding paragraph, Chipotle notes that at the trial court level, Lewings argued that her PAGA cause of action was not based solely on violations of sections 3751 and 3752, but also referred to her other causes of action. This leads Chipotle to argue: "But this ignores the fact that all of [Lewings] other claims are only derivative of the [section] 3751 and [section] 3752 claim. . . . Thus, because all of [Lewings's] claims are based on alleged violations of the workers' compensation law, none can support a claim for PAGA penalties." In our view, this argument is waived because Chipotle did not cite any law, nor did it engage in statutory interpretation to support its argument. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 ["'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived'"].)

In any event, the causes of action underlying the PAGA cause of action cannot properly be characterized as purely derivative of section 3751. For example, the alleged failure of Chipotle to comply with section 226, subdivision (a) by itemizing such things as total hours worked is wholly unrelated to a section 3751 violation.[16] And an examination of the alleged violation of sections 201/202 in this cases establishes that it is not coextensive with a violation of section 3751. Here, the alleged violation of section 3751 involves Chipotle knowingly receiving warranties from employees to cover the cost of compensation. In contrast, the alleged violation of sections 201/202 involves Chipotle's failure to repay the employees at the end of their employment because they used wages to secure the warranties.[17] Because the alleged violations of section 3751 and sections 201/202 are factually distinguishable, the policy prohibiting a PAGA cause of

---

[16]    A violation of section 226, subdivision (a) was alleged generally. As we have explained, the trial court ignored the special demurrer for uncertainty and assumed a general demurrer when sustaining the demurrer without leave to amend as to the fourth cause of action. We need not discuss whether the TAC was uncertain. That issue, as previously indicated, is moot.

[17]    We express no opinion as to whether that facts alleged establish a violation of sections 201/202. That is not the issue presented by Chipotle.

action based on section 3751 does not apply to a cause of action based on sections 201/202. As framed, the sections 201/202 cause of action is a wages withholding issue, not a workers' compensation issue.

All other issues are moot.

## DISPOSITION

The judgment of dismissal is affirmed as to the first cause of action for violation of section 3751. The judgment of dismissal is reversed as to the causes of action based on sections 201/202, section 226, subdivision (a), PAGA and the UCL. The case is remanded for further proceedings.

The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
BOREN


_____, J.
CHAVEZ