[No. E029624. Fourth Dist., Div. Two. Oct. 1, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
MAURICE VALENZUELA, Defendant and Appellant.

**COUNSEL**

Larry H. McBride, under appointment by the Court of Appeal, for Defendant and Appellant.

Grover Trask, District Attorney, and Patrick D. Harvill, Deputy District Attorney, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—The appellate department of the Riverside Superior Court affirmed a trial court holding that knowledge is *not* an element of the crime defined in Penal Code section 466.5, possession of a master key with the intent to commit an unlawful act.[1] The appellate department then granted defendant's request that the case be certified to this court pursuant to Code of Civil Procedure section 911 and California Rules of Court, rules 62 and 63. Under that procedure, a certification is appropriate when it appears that a transfer is necessary to secure uniformity of decision or to settle important questions of law. (Code Civ. Proc., § 911; *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 761-777 [98 Cal.Rptr.2d 1, 3 P.3d 286].) We then ordered the case transferred to this court for hearing and decision.

### FACTS

Defendant was charged with three misdemeanors: vehicle tampering in violation of Vehicle Code section 10852; spousal battery in violation of section 243, subdivision (e); and possession of a master key in violation of section 466.5.

The case was tried before Judge Van Frank commencing on April 20, 2000. The victim, Debbie Smith, testified that defendant had assaulted her and vandalized her car. She told the responding officers that defendant had a Ford master key that would unlock her Ford Escort. Defendant subsequently used the key to enter Ms. Smith's car.

Defendant testified and admitted that he had vandalized Ms. Smith's Ford Escort. He testified that he had been given the key by his employer to drive a Ford truck at work. He had discovered that it also worked to open the door on Ms. Smith's Ford Escort and a neighbor's Ford Explorer.

Defendant's employer, Desi Campbell, confirmed that he had given the key to defendant. He testified that a man named Sal put a new ignition switch into the truck, that Sal had obtained the key from Chief Auto Parts and that Sal had given the key to Mr. Campbell after Sal replaced the ignition switch on the truck.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

An officer testified that he tested the key by trying to open several Ford police vehicles. The key unlocked several Ford Crown Victoria patrol cars, and it also unlocked the door locks on an undercover car and a Ford Explorer. The officer found that the key could be inserted into the door lock on 10 cars, and it unlocked the door on four of them. No ignition switches were tested. Based on his testing, the officer concluded that the key was "some type of a master key."

The jury convicted defendant on all charges. Defendant appealed the case to the appellate department of the Riverside County Superior Court. As noted above, the appellate department filed an opinion that concluded that knowledge that the key was a master key is not an element of the crime described in section 466.5.

The sole issue for this court is whether the trial court and the appellate department were correct in concluding that knowledge that the key was a master key is not an element of the crime.

## DISCUSSION

Section 466.5 is found in a chapter dealing with burglary tools. Defendant was convicted under subdivision (b), which states: "Every person who, with the intent to use it in the commission of an unlawful act, uses a motor vehicle master key to open a lock or operate the ignition switch of any motor vehicle . . . is guilty of a misdemeanor." The statute defines the term "motor vehicle master key" to mean "a key which will operate all the locks or ignition switches, or both the locks and ignition switches, in a given group of motor vehicle locks or motor vehicle ignition switches, or both motor vehicle locks and motor vehicle ignition switches, each of which can be operated by a key which will not operate one or more of the other locks or ignition switches in such group." (§ 466.5, subd. (d)(1).)

■ The only reported case under section 466.5 is *People v. Spalliero* (1975) 54 Cal.App.3d Supp. 1 [126 Cal.Rptr. 469]. In that case the appellate department held that the statute was not unconstitutionally vague. The vagueness challenge was directed at the phrase "given group" as used in the definition of master key quoted above. (§ 466.5, subd. (d)(1).) The court held that the definition was constitutionally adequate: "As long as a key operates more than one lock or ignition switch, but each such lock or ignition switch also can be operated by a key which will not work in the lock or ignition switch of any other vehicle whose lock or switch may be operated by the first key, then the first key is a master key." (*Spalliero*, at p. Supp. 4.)

■ In the present case, the trial court instructed the jury that the elements of the crime are (1) "A person used a motor vehicle master key to

open a lock or operate the ignition switch of a motor vehicle" and (2) "The person did so with the specific intent to commit an unlawful act."

Defendant requested an additional instruction, CALJIC No. 1.21: "The word 'knowingly' means with knowledge of the existence of the facts in question. Knowledge of the unlawfulness of any act or omission is not required. [A requirement of knowledge does not mean that the act must be done with any specific intent.]" In other words, the defendant wanted to include, as an element of the crime, the requirement that defendant knew that the key he possessed was a master key.

Although the proposed instruction merely restates section 7, subdivision 5, the trial court rejected it. The court noted that possession of a master key is not a crime. It only becomes a crime when the key is used to open a vehicle door lock with the requisite specific intent.

Defendant argues that the trial court erred because a defendant must know that the key he has is a master key before the crime is committed. Conceding that the words of the statute do not require such knowledge, defendant argues that a knowledge requirement should be read into the statute. ■ Such an addition to the statutory language is not uncommon: "That the statute contains no reference to knowledge or other language of mens rea is not itself dispositive. As we recently explained, the requirement that, for a criminal conviction, the prosecution prove some form of guilty intent, knowledge, or criminal negligence is of such long standing and so fundamental to our criminal law that penal statutes will often be construed to contain such an element despite their failure expressly to state it." (*In re Jorge M.* (2000) 23 Cal.4th 866, 872 [98 Cal.Rptr.2d 466, 4 P.3d 297].)

■ Defendant relies on our Supreme Court's interpretations of drug and weapons possession statutes. In those cases, knowledge that the drug is a controlled substance, or knowledge that the subject weapon is, for example, a banned assault weapon, is an element of the offense, whether or not a knowledge element is provided for in the statute. Thus, in a drug possession case, the prosecution must show that the defendant knew the nature of the substance as a controlled substance, as well as the nature and presence of the controlled substance.

For example, in the case of *People v. Coria* (1999) 21 Cal.4th 868 [89 Cal.Rptr.2d 650, 985 P.2d 970], our Supreme Court held that knowledge of the character of the substance being manufactured is an essential element of the crime of manufacturing methamphetamine. (Health & Saf. Code, § 11379.6.) The court pointed out that a person could be engaged in a

portion of the manufacturing process without necessarily knowing that the end product was methamphetamine. The court noted that it had reached the same conclusion with regard to other drug statutes: "[A]lthough criminal statutes prohibiting the possession, transportation, or sale of a controlled substance do not expressly contain an element that the accused be aware of the character of the controlled substance at issue [citations], such a requirement has been implied by the courts. [Citations.] For the same reason, the manufacturing statute must be construed to include such a knowledge element. [Citation.]" (*People v. Coria, supra,* 21 Cal.4th 868, 878.) In reaching this conclusion, the court disapproved our decision in *People v. Telfer* (1991) 233 Cal.App.3d 1194 [284 Cal.Rptr. 913], a case relied on by the prosecution in this case.

■ In a recent weapons case, our Supreme Court held that, under the Assault Weapons Control Act, "the People must prove . . . that a defendant charged with possessing an unregistered assault weapon *knew or reasonably should have known* the characteristics of the weapon bringing it within the registration requirements of the AWCA." (*In re Jorge M., supra,* 23 Cal.4th 866, 869-870.) The court reviewed the history of knowledge requirements with regard to various weapons laws and concluded that the legislative and case history was not dispositive one way or another. (*Id.* at pp. 873-879.) The court concluded, however, that "Section 20's generally applicable presumption that a penal law requires criminal intent or negligence, the severity of the felony punishment imposed for violation of section 12280(b), and the significant possibility innocent possessors would become subject to that weighty sanction were the statute construed as dispensing entirely with mens rea, convince us section 12280(b) was not intended to be a strict liability offense. The gravity of the public safety threat addressed in the AWCA, however, together with the substantial number of prosecutions to be expected under it and the potential difficulty of routinely proving actual knowledge on the part of defendants, convince us section 12280(b) was not intended to contain such an actual knowledge element. Consequently, we construe section 12280(b) as requiring knowledge of, or negligence in regard to, the facts making the possession criminal. In a prosecution under section 12280(b), that is to say, the People bear the burden of proving the defendant *knew or reasonably should have known* the firearm possessed the characteristics bringing it within the AWCA." (*Jorge M.,* at p. 887, fn. omitted.)

■ In the recent case of *People v. Garcia* (2001) 25 Cal.4th 744 [107 Cal.Rptr.2d 355, 23 P.3d 590], our Supreme Court held that a violation of the sex offender registration law requires knowledge of the registration requirement because the violation was triggered by inaction, i.e., a failure to register, rather than by action.

▬ *Coria* and *Garcia* state the applicable general principle: "Generally, ' "[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." . . .' [Citation.] In other words, there must be a union of act and wrongful intent, or criminal negligence. [Citations.] 'So basic is this requirement that it is an invariable element of every crime unless excluded expressly or by necessary implication.' [Citation.] In addition, Penal Code section 26 provides that a person is incapable of committing a crime where an act is performed in ignorance or mistake of fact negating criminal intent; a crime cannot be committed by mere misfortune or accident. [Citation.]" (*People v. Coria, supra,* 21 Cal.4th 868, 876; see also *People v. Garcia, supra,* 25 Cal.4th 744, 754.)

As *Garcia* points out, the mens rea requirement is stated in section 20: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." (§ 20; *People v. Garcia, supra,* 25 Cal.4th 744, 754.) ▬ Section 466.5 has a mens rea requirement: the section is not violated unless the jury finds that defendant had the specific intent to use a master key in the commission of an unlawful act. The issue here is whether an additional mens rea requirement should be imposed, i.e., the requirement that the defendant knew the key he used was a master key.

▬ The issue is primarily an issue of statutory interpretation. "Resolution of the issue turns on ascertaining what the Legislature intended by means of settled principles of statutory construction. We look first to the words of the statute itself, which should be the best indicator of the lawmakers' intent. [Citation.] If those words are clear and unambiguous, we may not modify them to accomplish a purpose not apparent on the face of the statute or from its legislative history. [Citation.] But whether a statute is ambiguous is not always readily ascertainable. A statute must be considered in the context of the relevant statutory framework. [Citations.] When a particular provision appears in one statute but is omitted from a related statute, the most obvious conclusion from the omission is that a different legislative intent existed. [Citation.] On the other hand, an examination of legislative history and the pertinent statutory scheme may suggest that the omission was an oversight." (*People v. Goodloe* (1995) 37 Cal.App.4th 485, 490-491 [44 Cal.Rptr.2d 15].) ▬ Accordingly, we examine the text of section 466.5, the available legislative history, and its statutory context. Following this examination, we conclude that the trial court and the appellate department were correct in holding a knowledge requirement should not be read into the statute.[2]

We first look to the words of the statute. In section 466.5, the Legislature distinguished between possession of a master key (subd. (a)), use of a master

---

[2]"[K]nowledge is not identical with intent. [Citations.] It is, nevertheless, a mental state." (*People v. Foster* (1971) 19 Cal.App.3d 649, 655 [97 Cal.Rptr. 94].)

key (subd. (b)), and manufacture or sale of a master key (subd. (c)). The first two subdivisions require the intent to use the master key in the commission of an unlawful act, while the third subdivision proscribes knowing manufacture or sale of master keys, except for lawful purposes. The structure of the statute suggests that a specific intent mens rea element was intentionally used in the first two subdivisions, and a knowing requirement was intentionally used in the third subdivision.

█    Next, we examine the available legislative history. Defendant's counsel informs us that he had Legislative Intent Service research the legislative history of the statute. Having received that research, he asks us to take judicial notice of a letter from the author of the legislation to the Governor.[3] The prosecution opposes the request, arguing that the opinion of an individual legislator is not generally admissible as legislative history. The prosecution cites *Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062 [48 Cal.Rptr.2d 1, 906 P.2d 1057]: "[S]tatements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation. [Citations.]" The prosecution also cites our case of *McDowell v. Watson* (1997) 59 Cal.App.4th 1155 [69 Cal.Rptr.2d 692] in which we followed *Quintano* and declined to consider the views of an individual legislator. (*Id.* at pp. 1161-1162, fn. 3.) We adhere to *McDowell* and decline to take judicial notice of the requested letter.[4] Legislative history is therefore inconclusive.

█    The context of the statute is more persuasive. The section is in a chapter entitled Burglarious and Larcenous Instruments and Deadly Weapons. Some of the statutes within that chapter have explicit knowledge requirements and some do not.

Perhaps most persuasive is the proscription against burglary tools in section 466. That section outlaws possession of burglary tools, defined to include both master keys, common items such as screwdrivers and vise grip pliers, and less common items such as a keybit or slim jim.[5] The offense is defined as the possession of such a tool "with intent feloniously to break or

---

[3]Defendant's counsel states that the other materials found by Legislative Intent Service were merely copies of earlier versions of section 466.5. He offers his opinion that the author's letter was the only document reflecting the general purpose and scope of the section.

[4]We note, however, that nothing in the letter specifically addresses the question presented in this case. In addition, we are reluctant to sanction defense counsel's selective presentation of one excerpt from the legislative history obtained from the Legislative Intent Service. The entire legislative history should have been submitted to us.

[5]"A 'slim jim' is a tool for breaking into locked vehicles. [Citations.]" (*People v. Duarte* (2000) 24 Cal.4th 603, 609, fn. 1 [101 Cal.Rptr.2d 701, 12 P.3d 1110].)

enter into any building . . . ." Thus, the elements of the crime described in that section are possession and intent. There is no requirement that the defendant know that the screwdriver is a screwdriver, or the master key is a master key, or even that a particular tool is a slim jim. In other words, the possession of each of the items is lawful until it is intended to be used feloniously. The same must be true of section 466.5.

Section 466.1 provides that a person "who knowingly and willfully" sells lock picks and related items must keep a record of the transaction, and that failure to do so is a misdemeanor. This is similar to the knowing manufacture or sale of master keys prohibited by section 466.5, subdivision (c).

Section 466.3 prohibits possession of keys, tools or other instruments used to break into coin-operated machines. Such possession only becomes unlawful when it is combined with an "intent to commit a theft from such machine . . . ." (§ 466.3, subd. (a).) There is no requirement that the defendant know that the key opens a coin-operated machine.

Sections 466.6 and 466.8 are directed at the knowing manufacture of certain keys. The prohibitions in these sections are similar to the prohibitions against knowing manufacture or sale of master keys prohibited by section 466.5, subdivision (c).

Section 466.7 prohibits the possession of a key "with knowledge that such key was made without the consent of [the owner]" when such possession is with "the intent to use it in the commission of an unlawful act." Thus, the Legislature clearly articulated a knowledge requirement in this statute, along with a specific intent requirement.

Section 466.9 prohibits the possession of a "code grabbing device." The requisite specific intent is the intent to use the device in the commission of an unlawful act. There is no specific requirement that the defendant know that the device he possessed was a code grabbing device.

Section 468, on the other hand, prohibits the knowing buying, selling or possessing of a sniperscope. Under this section, the defendant must know that the device he possessed was a sniperscope, and no specific intent is required.

Finally, section 469 prohibits the knowing manufacture or possession of a duplicate key to a state building. Again, knowledge suffices, and there is no specific intent required.

Our review of these statutes leads us to the conclusion that the Legislature carefully delineated instances in which a specific criminal intent is

required for conviction (§§ 466, 466.3, 466.5, subds. (a) & (b), 466.9), situations in which only knowledge is required (§§ 466.1, 466.5, subd. (c), 466.6, 466.8, 468 & 469), and one situation in which both knowledge and intent are required (§ 466.7). The Legislature therefore defined the mens rea requirement of these misdemeanor crimes as either knowledge or a specific intent or, in the case of section 466.7, both. Since section 466.5, subdivision (b), has an appropriate mens rea requirement, we see no reason to add a knowledge element to it, even though the statute could be theoretically violated by a person without knowledge that the key he or she used was a master key.[6] (See generally Perkins, *"Knowledge" as a Mens Rea Requirement* (1977-1978) 29 Hastings L.J. 953.)

Since the statute has a mens rea requirement of a specific intent to use a master key in the commission of an unlawful act, the omission of a knowledge requirement does not turn the statute into a strict liability statute. Thus, we need not consider the strict liability or public welfare crimes which are usually regulatory crimes which can be violated without a wrongful intent. (See, e.g., *People v. Coria, supra,* 21 Cal.4th 868, 876-880.) However, the fact that the crime here is a relatively minor misdemeanor suggests that a strict knowledge requirement should not be imposed. After all, the strict liability cases criminalize conduct regardless of wrongful intent or knowledge. (See generally 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, §§ 17, 18, pp. 220-223.)

We note, however, that unlike the drug possession cases, possession of a master key is not a crime. It becomes a crime only when the master key is used as a burglary tool under section 466, i.e., it is used "with intent feloniously to break or enter into any building," or when the master key is used to open a car doorlock "with the intent to use it in the commission of an unlawful act" in violation of section 466.5, subdivision (b). As the court in *Spalliero* noted: "Penal Code section 466.5, subdivision (a), requires that one possessing a master key, does not violate the statute unless he does so with the intent to commit an unlawful act. Even if the statute were otherwise

---

[6]For instance, a defendant could steal a key ring containing a master key without knowing it was a master key. If defendant then used the key to open a car door lock with the requisite specific intent he would be in violation of section 466.5, subdivision (b), even though he did not know the key would open other cars.

In most instances, however, the requisite knowledge that the key was a master key is provided by the definition of a master key in section 466.5, subdivision (d)(1). If defendant knows that a key is not the owner's key, and that it will open more than one car door, as defendant did here, then defendant knows that the key is a master key. In most cases, therefore, the requisite proof that the key is a master key will include proof that defendant knew that the key would operate more than one car door.

In any event, under the testimony in this case, any instructional error was harmless under any standard.

vague, and we do not think it is subject to that criticism, the presence of this required specific intent would save it. [Citation.]" (*People v. Spalliero, supra,* 54 Cal.App.3d Supp. 1, 4.)

We also reject the analogy to the weapons cases. The possession of assault weapons is a crime if the defendant knows or should have known that the weapon was an assault weapon. (*In re Jorge M., supra,* 23 Cal.4th 866, 869-870.) Thus, assault weapons falling within the statutory definition cannot be legally possessed. The case of a master key is different because a master key can be lawfully possessed. The possession only becomes unlawful when the key possessor has the specific intent to use the master key for an unlawful purpose. (§§ 466, 466.5, subd. (b).) As the prosecution put it, "The requirement that the defendant possess the key with the intention to commit an unlawful act precludes punishment for innocent possession."

Accordingly, we conclude that knowledge that a key used in the crime was a master key is not an element of the offense described in section 466.5, subdivision (b).

### DISPOSITION

The judgment is affirmed.

McKinster, J., and Richli, J., concurred.

A petition for a rehearing was denied October 19, 2001.