[Civ. No. 30219. Fourth Dist., Div. Three. Oct. 31, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD FRED LEWIS, Defendant and Appellant.

**COUNSEL**

Gary Gunderman and Ronald C. Koerner for Defendant and Appellant.

Richard Erwin, Public Defender (Ventura), as Amicus Curiae on behalf of Defendant and Appellant.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Michael P. Maguire, Deputy District Attorneys, for Plaintiff and Respondent.

John K. Van de Kamp, Attorney General, Harley D. Mayfield, Assistant Attorney General, and Jay M. Bloom, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**CROSBY, J.**—We are asked to consider the constitutionality of Vehicle Code section 23152, subdivision (b), driving with a blood alcohol level of .10 percent or more. This appeal is on certification from the Appellate Department of the Superior Court of Orange County, which affirmed Lewis' municipal court conviction of that offense.[1]

I

When Lewis was arrested, section 23152, subdivision (b) provided, "It is unlawful for any person who has 0.10 percent or more, by weight, of

---

[1]Of course, we realize our Supreme Court has agreed to pin this particular butterfly. The constitutionality of section 23152, subdivision (b) is now before that court in *Burg* v. *Municipal Court* (hg. granted Aug. 25, 1983, S.F. 24622) and *People* v. *Alfaro* (hg. granted Aug. 25, 1983, Crim. 23277). When this case was certified, the opinions in *Burg* and *Alfaro* had not yet issued from the Court of Appeal.

alcohol in his or her blood to drive a vehicle upon a highway or upon other than a highway in areas which are open to the general public. [¶] For purposes of this subdivision, percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood." Lewis was convicted under this section on evidence of blood alcohol breath tests of .13 and .14; the jury was unable to agree on the companion charge of driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)).

We have concluded that while many of the arguments of the detractors of the "(b) section," as it is popularly known, have some legal glitter, they are not quite gold. We examine them in turn.

## II

■ Is the (b) section void for vagueness? The argument is not that the statute is imprecise; it could hardly be more so. Rather, it is suggested, only scientists understand what it proscribes and even they would be unable, as a practical matter, to conform their conduct to its terms. ■ But, although "[i]t is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed[]'. . . [e]ven trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. [Citations.] All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden. [Fn. omitted.]" (*Rose* v. *Locke* (1975) 423 U.S. 48, 49-50 [46 L.Ed.2d 185, 188, 96 S.Ct. 243].) Or, as the California Supreme Court has said on several occasions, "[a statute] will be upheld if its terms may be made reasonably certain by reference to other definable sources." (*American Civil Liberties Union* v. *Board of Education* (1963) 59 Cal.2d 203, 218 [28 Cal.Rptr. 700, 379 P.2d 4]; see also *People* v. *Superior Court* (*Hartway*) (1977) 19 Cal.3d 338, 345 [138 Cal.Rptr. 66, 562 P.2d 1315].)

■ The burden the (b) section places on the drinking motorist is new in this state in the sense that it uses precise numbers to define a long recognized social evil. However, in light of the now virtually unanimous scientific opinion that all persons are under the influence at .10 for purposes of the traditional offense of driving under the influence described by the (a) section (*People* v. *Lachman* (1972) 23 Cal.App.3d 1094 [100 Cal.Rptr. 710]), the new law does not seem to us to create the dramatic hardship its detractors proclaim. If a person is under the influence, he or she should not drive at *any* blood alcohol level (Veh. Code, § 23152, subd. (a)). A person who is *not* under the influence does not have a blood alcohol level at .10 or

above, according to the experts. The (b) section is thus grounded on the same well established premise as the (a) section, which simply assumes the imbiber knows when he or she is under the influence (a premise the defense briefs do not dispute).

In other words, in cases at .10 and above, the statutes can be viewed as proscriptions of the same conduct with different elements of proof. As our facts illustrate, the (b) section may be the easier to prove in a given case, perhaps in most cases, but a violator has no cause to complain on that score. Regulation of the drinking driver is not rooted in the Bill of Rights, the Magna Carta, or the tablets of Moses. The Legislature is free to address the matter in various, and varying, ways.

Moreover, to the extent the (b) section is viewed as requiring some form of measurement or calculation, such burdens are hardly unique in traffic safety regulation. Speed laws and weight restrictions require nice calculation or wise estimation, often in coordination with technical devices. The Legislature has not yet required drinking drivers to maintain a breath alcohol testing device alongside the speedometer, but it could undoubtedly do so. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70 [177 Cal.Rptr. 566, 634 P.2d 917].)

In addition, those individuals who insist they can reach the .10 level without coming under the influence of alcohol, or doubt they can tell if they do, may conform their conduct to the (b) section by voluntary acquisition of a relatively inexpensive breath testing device or by use of readily available charts and controlled ingestion, since it is not possible to exceed .10 if one does not consume enough alcohol to do so. The new statute, viewed as a "virtual resurrection of prohibition," as appellant claims, presents no constitutional issue. (U.S. Const., Amend. XXI, § 2.) This state is free to adopt prohibition for drivers or by constitutional amendment, for the whole population if it chooses. (*Ibid.*, Cal. Const., art. XX, § 22.) Of course, the defense is correct to a point; the truly concerned citizen does have the additional options of abstention or moderation to avoid violation of the (b) section. Careful drivers do not fully rely on a speedometer; they allow a margin for error. Careful truckers avoid overweight violations in the same way. No deprivation of constitutional proportion results.

Vagueness challenges do not turn on the contemplation of marginal cases (*United States* v. *Mazurie* (1975) 419 U.S. 544 [42 L.Ed.2d 706, 95 S.Ct. 710].), although it *is* easy to conjure them up here. (See, e.g., *People* v. *Campos* (1982) 138 Cal.App.3d Supp. 1 [188 Cal.Rptr. 366] and *Slaughter* v. *State* (Del. 1974) 322 A.2d 15.) The (b) section gives fair warning of the conduct proscribed. We agree with the other jurisdictions which have

considered and unanimously upheld similar statutes; while it may not be easy, it is not beyond the ken of the average motorist to conform to the statute. (See, e.g., *State* v. *Franco* (1982) 96 Wn.2d 816 [639 P.2d 1320]; *Greaves* v. *State* (Utah 1974) 528 P.2d 805;[2] *State* v. *Clark* (1978) 35 Ore.App. 851 [583 P.2d 1142.) Mr. Justice Holmes probably said it best seventy years ago: "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." (*Nash* v. *United States* (1913) 229 U.S. 373, 377 [57 L.Ed. 1232, 1235, 33 S.Ct. 780].)

## III

Is the (b) section a strict liability statute, as the defense contends? We doubt this is a live issue in this case. The jury instructions are not part of the appellate record. For all we know, the municipal court defined the (b) section as a *specific* intent crime to the jury. ■ The complaint properly alleges Lewis "wilfully" violated both the (a) and (b) sections. This is sufficient pleading of criminal intent (*In re Trombley* (1948) 31 Cal.2d 801, 807-808 [193 P.2d 734]); and we can only assume the court correctly instructed in accordance with the complaint that a defendant at a blood alcohol level of .10 or higher must entertain the general intent to drive the vehicle in order to violate the (b) section. ■ ■ ■ ■ (See Pen. Code, § 20; *People* v. *Mayberry* (1975) 15 Cal.3d 143, 154 [125 Cal.Rptr. 745, 542 P.2d 1337]; and *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].)[3]

## IV

■ Does the (b) section create an impermissible conclusive or irrebuttable presumption? (See *People* v. *Roder* (1983) 33 Cal.3d 491 [189 Cal.Rptr. 501, 658 P.2d 1302].) Although we have frankly acknowledged the (a) and (b) sections do proscribe the same conduct when the blood

---

[2]The dissent in *Greaves* argues, "The statute under consideration does not specify and prohibit conduct which might be criminal in character but it deals only with the status of one's blood. On the same basis the legislature could denounce as a crime the appearance in a public place of one who has the virus of the common cold in his blood stream [*sic*]." (*Greaves, supra,* 528 P.2d at p. 808 (dis. opn. of Tuckett, J.).) We see no constitutional difficulty in barring persons known to have a communicable disease from public places. In fact, California routinely refuses drivers licenses to those who are subject to physical or health problems *not of their own making,* where those persons could present a danger to themselves and others on the highway. (Veh. Code, § 12805, subds. (c), (d), and (f).)

[3]We agree the (b) section must be construed to require proof of scienter in order to survive constitutional challenge (*Colautti* v. *Franklin* (1979) 439 U.S. 379 [58 L.Ed.2d 596, 99 S.Ct. 675]), but note the term is subject to no precise definition and necessarily rocks on the seas of varying governmental objectives and opposing notions of individual responsibility. For the reasons discussed in part II above, a general intent instruction is all that is required. (See Perkins on Criminal Law (2d ed. 1969) pp. 771-779.)

alcohol level is .10 or higher (assuming the scientific lore is accurate), this is not the same as saying the (b) section is merely the (a) section in disguise—with conclusive presumption grafted on. The problems of proof will differ with each offense and so will the jury's verdict on occasion, as this case illustrates. The (b) section requires no evidence of impairment; the (a) section does. They are clearly different offenses. ■ Nothing precludes the Legislature from proscribing the same general conduct in different and overlapping ways, although there can be but one punishment imposed.[4] (Pen. Code, § 654.) ■ And nothing prevents the defendant from challenging the test result under the new law; it is not presumed to be correct or to reflect the actual blood alcohol level at the time of driving.

Appellant's other contentions, presented only by his adoption of the amicus defense brief, were not raised in either court below. We decline to consider them for the first time at this late stage.

Judgment affirmed.

Trotter, P. J., and Sonenshine, J., concurred.

---

[4]The criminal law is replete with overlapping offenses. Most robberies committed indoors are also burglaries. Most murders can also be described as assaults with a deadly weapon. Mayhem can also be charged as assault, battery and assault with a deadly weapon. Three separate and overlapping offenses describe the taking of a vehicle without the consent of the owner (Pen. Code, §§ 484-487; Veh. Code, § 10851; Pen. Code, § 499b; and so on.)