Filed 8/10/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ANA C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> ANA C., <br><br>     Defendant and Appellant. | A145411 <br><br> (San Mateo County Super. Ct. No. JV83891) |

        Ana C. (Minor), a ward of the juvenile court, appeals a dispositional order continuing her wardship, removing her from parental custody, committing her to the San Mateo County Juvenile Rehabilitation Facility, Margaret J. Kemp Camp for Girls (Girls Camp), and imposing various conditions of probation. The sole focus of her appeal is on whether six of these probation conditions are facially unconstitutional for vagueness. We vacate one of the challenged conditions and modify two others, but otherwise affirm.

### I.     BACKGROUND

        In August 2014, Minor, then 17 years old, was arrested following a joyriding incident involving a stolen car. According to the probation report, a California Highway Patrol officer spotted the car driving erratically on Highway 101 and initiated a traffic stop, but the car accelerated to a speed exceeding 90 miles per hour and eventually crashed along the side of a freeway off-ramp. Appellant and two friends emerged from

the car. The two others, one of whom was Minor's boyfriend, Eduardo F., fled the scene, but Minor was arrested. Minor falsely reported to the arresting officer that she had been driving. The officer determined that Eduardo F. had been driving, which was confirmed when, following Eduardo F.'s later arrest, he admitted to having been the driver. There was also evidence that, before the crash, Minor had been drinking. Following her arrest, she submitted to a blood test, which showed a blood alcohol level of .01 percent.

Based on this incident, the district attorney filed a petition under section 602 of the Welfare and Institutions Code[1] charging Minor with stealing a vehicle (Veh. Code, § 10851, subd. (a)), driving a vehicle with wanton disregard for the safety of others (Pen. Code, § 2800.2), possession of stolen property (Pen. Code, § 496, subd. (a)), selling a vehicle without the vehicle registration number (Veh. Code, § 10751, subd. (a)), displaying a false license plate (Veh. Code, § 4463, subd. (a)(1)), resisting a peace officer (Pen. Code, § 148, subd. (a)(1)), possessing burglary tools (Pen. Code, § 466), giving false information to a peace officer (Veh. Code, § 31), and falsely reporting a crime to a peace officer (Pen. Code, § 148.5, subd. (a)). Minor admitted two misdemeanor counts (resisting arrest, and falsely reporting a crime) and the remaining counts were dismissed.

In August and September 2014, the juvenile court sustained the section 602 petition, as modified, and declared Minor to be a ward of the court with a maximum confinement time of 14 months, detaining her in the custody of her mother, and imposing various conditions of probation. Among the conditions of probation was a curfew requiring Minor to be home between 10:00 p.m. and 6:00 a.m.; a stay-away order barring Minor from seeing Eduardo F.; a ban on possession or use of alcohol, drugs or tobacco (the Alcohol, Drugs and Smoking Ban); a ban on possession of drug paraphernalia (the Drug Paraphernalia Ban); and a requirement that Minor attend school regularly (the School Attendance Requirement). For the first 30 days of Minor's wardship, the court placed her under house arrest in her mother's home, subject to electronic monitoring (the

_____

[1] Unless otherwise specifically designated, all further statutory references are to the Welfare and Institutions Code.

Electronic Monitoring Condition).  Minor was directed to "obey all rules and regulations of the Electronic Monitoring Program," and, while she was subject to electronic monitoring, the probation department was given discretion to detain her for up to five days in [Juvenile Hall] for any "violation of Court orders or the Electronic Monitoring Agreement."

Within three weeks of the declaration of her wardship, according to a probation report, Minor left her mother's home without permission and cut her electronic monitoring bracelet from her ankle.  As a result, she was charged in a second section 602 petition with misdemeanor vandalism, and in a section 777 notice of probation violation she was charged with violating the terms of her probation.  On November 5, 2014, Minor admitted the vandalism allegation, and her maximum confinement time was extended to 18 months.  Minor was detained in juvenile hall for 27 days, and ordered to participate in family preservation services so that she and her mother could receive counseling assistance designed to facilitate successful at-home completion of her probation.  The Electronic Monitoring Condition, which was limited by its terms to a 30-day period, was vacated.

Upon a referral from the probation department based on a report that Minor left her mother's home in violation of her curfew, on March 19, 2015 Minor was found to have violated her probation.  The court ordered 30 days of detention in juvenile hall and committed Minor to the G.I.R.L.S. Program, an out-of-home placement,[2] but stayed the

---

[2] According to the website of the San Mateo County Probation Department, the "G.I.R.L.S. (Gaining Independence and Reclaiming Lives Successfully) Program is based on gender-responsive principles . . . .  Gender-responsiveness is the idea that our girls commit crimes for different reasons than boys, therefore if we can address those issues we can reduce their criminal risk. . . . [¶] Referrals to the G.I.R.L.S. Program are made at the pre-trial and dispositional hearing stages. . . . The G.I.R.L.S. program is a three phase program with phase I beginning in custody [at Girls Camp]." (<http://probation.smcgov.org/girls-program> [as of August 8, 2016].)  In light of the references to the G.I.R.L.S. Program in the appellate record, and for purposes of clarity in setting forth the probationary context here, we take judicial notice, on our own motion, of the official explanation of this program found on the website of the San Mateo County Probation Department.  (See Evid. Code, §§ 452, subd. (c), 459, subd. (a); *Cruz v. County*

3

G.I.R.L.S. Program commitment in order to give Minor another chance to demonstrate that she could meet the terms of her probation while detained at home.  At the section 777 hearing, in light of the reportedly strained relationship between Minor and her mother, the court ordered mediation in addition to the previously-ordered family preservation services.

In April 2015, according to a probation report, Minor left her mother's home in violation of her curfew again, this time for a period of several days.  After finding Minor to be in violation of her probation, on June 15, 2015, the juvenile court determined that in-home detention had failed, removed Minor from her mother's custody, and ordered her into the G.I.R.L.S. Program at Girls Camp (the June 15 Dispositional Order).  The June 15 Dispositional Order was structured to anticipate what would occur once Minor completed phase one of the G.I.R.L.S. Program.  When released from Girls Camp, Minor was to begin phase two of the G.I.R.L.S. Program and was to return to her mother's custody, but would remain subject to the conditions of probation that were originally imposed on her in September 2014, with some additions and modifications.

Several of the added conditions in the June 15 Dispositional Order focused on alcohol and drug use and on Internet activity.[3]  To prevent interference with chemical testing for drug usage, Minor was barred from "consum[ing] any poppy seed products or other substances known to adulterate or interfere with chemical testing" (the Poppy Seed Products Ban).  To track Minor's Internet activities, the court imposed an electronic search condition requiring Minor to surrender, upon demand by her probation officer or a peace officer, all encryption keys or passwords to electronic devices used by her.  And to prevent deletion of digital data from any of her electronic devices, the court ordered that "The Minor shall not possess or utilize any program or application, on any electronic data

_of Los Angeles_ (1985) 173 Cal.App.3d 1131, 1134 [judicial notice may be taken of official acts of county].)

[3] There was evidence in one of the probation reports that Minor's mother had seen images of her on Facebook using alcohol.

4

storage device, that automatically or through a remote command deletes data from that device" (the Data Deletion Tools Ban).

The June 15 Dispositional Order also reinstated the Electronic Monitoring Condition, placing Minor under electronically monitored house arrest for at least 30 days following her release from Girls Camp. Minor's probation officer was given discretion, as appropriate, to extend the time Minor will be subject to the electronic monitoring, to detain Minor at Girls Camp for violation of electronic monitoring program rules, to lift or impose house arrest, and to adjust Minor's curfew. The June 2015 Dispositional Order stated: "During the Minor's time in the Girls Program, the probation officer has the discretion . . . to place the Minor on and vacate the Electronic Monitoring Program, . . . or House Arrest/Supervision, and to impose or adjust a curfew."

Minor timely appealed, and now argues that the Alcohol, Drugs and Smoking Ban, the Drug Paraphernalia Ban, the Poppy Seed Products Ban, the Electronic Monitoring Condition, the Data Deletion Tools Ban, and the School Attendance Requirement are unconstitutionally vague.[4]

## II.  DISCUSSION

A.  *Applicable Law in Probation Cases Involving Claims of Facial Vagueness*

It is just as true for juveniles as it is for adults that probationers " ' " 'do not enjoy "the absolute liberty to which every citizen is entitled." ' " ' " (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1350 (*Pirali*).) If anything, "[t]he permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults.

---

[4] The notice of appeal specifies the June 15 Dispositional Order as the order appealed from. Even though four of the six probation conditions challenged in the appeal were originally imposed in September 2014, there is no issue of appealability here since all six of the challenged probation conditions were either imposed or re-imposed in the June 15 Dispositional Order and are fully set forth in that order. (Cf. *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1137 (*Shaun R.*) [in juvenile probation case where a probationer appealed from a 2009 dispositional order and sought to bring a vagueness challenge to multiple probation conditions, some of which were originally imposed in 2008 but were merely incorporated by reference in the 2009 order, the conditions imposed in 2008 were not appealable].)

5

'[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults." ' [Citation.] This is because juveniles are deemed to be 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' [Citation.] Thus, ' "a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court." ' " (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).)

Whether adults or juveniles, however, probationers " 'are not divested of all constitutional rights. "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a [constitutional] challenge on the ground of vagueness . . . ." [Citation.]' " (*Pirali*, *supra*, 217 Cal.App.4th at p. 1350.) "The prohibition on vagueness is rooted in ' "ordinary notions of fair play and the settled rules of law," and a statute that flouts it "violates the first essential of due process." ' [Citation.] This concern for fair warning is aimed at ensuring that a ' "person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited, so that he may act accordingly." ' [Citations.] The fear is that vague laws will ' "trap the innocent." ' [Citation.] More broadly, ' " 'a law that is "void for vagueness" . . . "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." ' " ' " (*In re Kevin F.* (2015) 239 Cal.App.4th 351, 357–358 (*Kevin F.*).) "Although the [vagueness] doctrine focuses both on actual notice to citizens and arbitrary enforcement," the United States Supreme Court has "recognized . . . that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' " (*Kolender v. Lawson* (1983) 461 U.S. 352, 357–358 (*Kolender*).)

6

"A defendant may contend for the first time on appeal that a probation condition is unconstitutionally vague . . . on its face when the challenge presents a pure question of law that the appellate court can resolve without reference to the sentencing record. [Citations.]" (*Kevin F.*, *supra*, 239 Cal.App.4th at p. 357; see *In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).) If the vagueness of a probation condition may be corrected "without reference to the particular sentencing record developed in the trial court" (*Sheena K., supra,* at p. 887), the condition is subject to de novo review on appeal as a matter of law. (*Shaun R.*, *supra*, 188 Cal.App.4th at p. 1143.) When *Sheena K.* review is undertaken, it is important to bear in mind that not all cases of facial vagueness are cases of *unconstitutional* vagueness, involving language so obscure that it fails to give fair warning of potential violation. Context matters, even in a facial challenge. "In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific *context,*' and that, although not admitting of 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)[5]

Thus, the void-for-vagueness doctrine does not apply simply " ' "because there may be difficulty in determining whether some marginal or hypothetical act is covered by

---

[5] The traditional test in cases involving facial vagueness challenges to legislation is often phrased as whether the language or phrasing at issue is reasonably understandable to "ordinary people." (See, e.g., *Kolender, supra*, 461 U.S. at p. 357 ["the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited"]; see also *People v. Tapia* (2005) 129 Cal.App.4th 1153, 1167 (*Tapia*).) More specifically stated, however, vagueness analysis looks to whether the language in question is definite enough to " ' "provide . . . a standard of conduct *for those whose activities are proscribed* . . . ." ' " (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567, italics added.) Thus, in a juvenile probation case, the most accurate way to frame the test for vagueness is that we must ask whether the language claimed to be vague is reasonably understandable to *an ordinary juvenile of the age of the minor*. After all, probation conditions, unlike generally applicable legislation, are in effect "special 'laws' tailored only to" an individual probationer (*United States v. Loy* (3d Cir. 2001) 237 F.3d 251, 260 (*Loy*)), and here that person is a juvenile.

[the challenged] language." ' " (*People v. Morgan* (2007) 42 Cal.4th 593, 606; see also *Tapia*, *supra*, 129 Cal.App.4th at p. 1167 ["The fact that a statute contains 'one or more ambiguities requiring interpretation does not make the statute unconstitutionally vague on its face' "]; *People v. Lewis* (1983) 148 Cal.App.3d 614, 618 (*Lewis*) ["Vagueness challenges do not turn on the contemplation of marginal cases [citation] . . . [even where it is] easy to conjure them up . . . ."].)  The meaning of a challenged condition will often be plain enough when its language is considered as a whole, together with related conditions, against the backdrop of governing law, or with reference to other aids to practical construction.  (See *People v. Lopez* (1998) 66 Cal.App.4th 615, 630 (*Lopez*) ["a statute 'will not be held void for vagueness "if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources" ' "].)

B.       *The Omission of an Express Scienter Requirement*

With one exception (her challenge to the School Attendance Requirement), Minor bases her appeal on a single argument:  Because five of the challenged probation conditions in this case lack an express scienter requirement, she contends we must add one by modification.  Relying primarily on *Kevin F.*, *supra*, 239 Cal.App.4th 351, and *People v. Freitas* (2009) 179 Cal.App.4th 747 (*Freitas*), she argues that a knowledge requirement "should not be left to implication." (*People v. Garcia* (1993) 19 Cal.App.4th 97, 102; see *Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  In her view, *Kevin F.* and *Freitas* correctly apply *Sheena K.*, *supra*, 40 Cal.4th at p. 890, our Supreme Court's most recent decision addressing "the need for a scienter clause in probation cases."  Without an express scienter requirement, she argues, she might innocently and inadvertently violate her probation.  (See *Pirali*, *supra*, 217 Cal.App.4th at p. 1352; *People v. Kim* (2011) 193 Cal.App.4th 836, 843 (*Kim*); *Victor L.*, *supra*, 182 Cal.App.4th at p. 912.)  With respect to each of the five conditions she challenges for lack of an express scienter requirement, Minor claims there is no need to resort to the specific facts of her situation.  Each condition challenged on this ground "is either constitutional or unconstitutional [on its

8

face] in every juvenile case," without reference to the individualized circumstances that drove its imposition.

By way of response, the Attorney General contends we should follow *People v. Gaines* (2015) 242 Cal.App.4th 1035 (*Gaines*), review granted and opinion superseded Feb. 17, 2016, S231723, and imply a scienter requirement.[6] (See also *People v. Appleton* (2016) 245 Cal.App.4th 717, 728; *People v. Contreras* (2015) 237 Cal.App.4th 868, 887; *People v. Moore* (2012) 211 Cal.App.4th 1179, 1186 (*Moore*).) Under this line of authority, we are told, so long as the proscribed conduct is described with sufficient clarity—which the Attorney General contends is the case for each of the conditions challenged as lacking an express knowledge requirement—the "willfulness" standard in probation revocation proceedings provides adequate protection against unwitting violation. Reminding us that *Sheena K.* "recognized a limited class of claims [eligible to be] raised . . . for the first time on appeal," the Attorney General argues that *Sheena K.* review for facial vagueness is subject to "the overriding principle" that " 'discretion to excuse forfeiture *should be exercised rarely* and only in cases presenting an important legal issue' " (quoting *Sheena K.*, *supra*, 40 Cal.4th at p. 892, fn. 7, italics added). Here, the Attorney General contends, Minor's claims of facial unconstitutionality raise no such issue, and in any event cannot be resolved without reference to the facts and circumstances surrounding the imposition of these conditions on Minor.

The Attorney General insists that *Gaines*, not *Kevin F.*, "provides the better rule." "Until our Supreme Court rules differently, we will follow its lead on this point" (*Pirali*, *supra*, 217 Cal.App.4th at p. 1351), which may be found in *Sheena K.*, as we explained in *Kevin F.* In the meantime, we will concern ourselves here only with the narrower question of whether, under the cases calling for the addition of an explicit knowledge requirement, of which *Kevin F.* is but a recent example, such a modification is warranted

---

[6] Late last year, the Supreme Court granted review in another case, presenting the same issue, from the same appellate panel that decided *Gaines*. (See *People v. Hall* (2015) 236 Cal.App.4th 1124, review granted and opinion superseded Sept. 9, 2015, S227193.)

by the particular phrasing of the conditions presented for review. Under *Sheena K.*, "an appellate claim—amounting to a 'facial challenge'—that phrasing or language of a probation condition is unconstitutionally vague and overbroad because, for example, of the absence of a requirement of knowledge . . . , does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts," which is "a task that is well suited to the role of an appellate court." (*Sheena K.*, *supra*, 40 Cal.4th at p. 885.)

In undertaking *Sheena K.* review here, it is important to note that, even where a challenged probation condition is phrased in language raising genuine due process concerns, the addition of an express knowledge requirement may not be adequate or appropriately fitted to the task of curing vagueness. "Though in some situations, a scienter requirement may mitigate" lack of fair warning due to vagueness, "such a requirement will not cure all defects for all purposes . . . ." (*Loy*, *supra*, 237 F.3d at p. 265.) That is why in *Kevin F.*, recognizing that facial vagueness is context-sensitive, we declined to take a categorical approach to the express scienter issue in probation conditions cases, either always dispensing with the need for scienter language on grounds it is unnecessary, or always finding it to be required. (*Kevin F.*, *supra*, 239 Cal.App.4th at p. 362, fn. 5.) Instead, we saw a need to evaluate each challenged probation condition as it comes to us, on a case-by-case basis. (*Ibid.*) We now turn to specific consideration of the probation conditions challenged in this case.

C.   *Condition-By-Condition Analysis*

1. The Alcohol, Drugs and Smoking Ban

The juvenile court ordered that "[t]he Minor is not to use, possess, or be under the influence of any alcoholic beverages, controlled substances, or tobacco, including electronic cigarettes." We see no need to add an express scienter requirement here. For the most part, the Alcohol, Drugs and Smoking Ban simply implements applicable law.

With respect to alcohol, "any person under 21 years of age who purchases any alcoholic beverage . . . is guilty of a misdemeanor." (Bus. & Prof. Code, § 25658; see

10

also Cal. Const., art. XX, § 22 ["no person shall sell, furnish, give, or cause to be sold, furnished, or given away any alcoholic beverage to any person under the age of 21 years, and no person under the age of 21 years shall purchase any alcoholic beverage"].) Similarly, pursuant to recent statutory amendments, it generally is illegal to sell or distribute tobacco products, including electronic cigarettes, to persons under 21 years of age (raised from the previous age limit of 18 years of age). (Pen. Code, § 308, subd. (a)(1)(A)(i), (f); Bus. & Prof. Code, § 22950.5, subd. (d); see *id.*, § 22950 et seq., commonly known as the Stop Tobacco Access to Kids Enforcement Act (STAKE Act) [regulating the manner in which tobacco products may be sold and distributed and prohibiting such sales and distribution to persons under 21 years of age]; Stats. 2015–2016, 2nd Ex. Sess., ch. 7 (Sen. Bill 5), eff. June 9, 2016; Stats. 2015–2016, 2nd Ex. Sess., ch. 8 (Sen. Bill 7), eff. June 9, 2016.)

The prohibition on possession and use of alcohol in the Alcohol, Drugs and Smoking Ban is readily understandable to the average juvenile, in our view. Among young people Minor's age, we believe these age minimums are so well known that there is no need for any express scienter requirement. Under the "fundamental principle that, in the absence of specific language to the contrary, ignorance of a law is not a defense to a charge of its violation" (*Hale v. Morgan* (1978) 22 Cal.3d 388, 396; see *People v. Snyder* (1982) 32 Cal.3d 590, 592–593), Minor can be expected to abide by the law applicable to her. Indeed, one of the other conditions imposed on her—a condition that she does not challenge—requires her to "obey all laws . . . ."

With respect to controlled substances, the California Uniform Controlled Substances Act, Health and Safety Code section 11000 et seq., broadly prohibits the transportation, sale and possession of controlled substances so as to protect the health and safety of all persons within this state, except as permitted by prescription, license or other statutory authorization. (See, e.g., Health & Saf. Code, §§ 11350, 11351, 11352.) "Case law has construed these statutes as including implicit knowledge elements. '[A]lthough

11

criminal statutes prohibiting the possession, transportation, or sale of a controlled substance do not expressly contain an element that the accused be aware of the character of the controlled substance at issue ([Health & Saf. Code,] §§ 11350–11352, 11357–11360, 11377–11379), such a requirement has been implied by the courts.' [Citation.] 'The essential elements of unlawful possession of a controlled substance are "dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character." ' [Citation.] 'Although the possessor's knowledge of the presence of the controlled substance and its nature as a restricted dangerous drug must be shown, no further showing of a subjective mental state is required.' [Citation.]" (*People v. Rodriguez* (2013) 222 Cal.App.4th 578, 593 (*Rodriguez*) ["To the extent condition 8 reinforces defendant's obligations under the California Uniform Controlled Substances Act, the same knowledge element which has been found to be implicit in those statutes is reasonably implicit in the condition. What is implicit is that possession of a controlled substance involves the mental elements of knowing of its presence and of its nature as a restricted substance."]; accord, *People v. Nice* (2016) 247 Cal.App.4th 928, 945–946.)

*Rodriguez* adopted the implied scienter analysis of *Kim*, *supra,* 193 Cal.App.4th at p. 847. In *Kim*, the challenged probation condition, a lifetime ban on possession of weapons and ammunition, expressly referenced Penal Code former sections 12021 and 12316, subdivision (b), which together barred possession of firearms and ammunition by felons for life.[7] Since the appellant in *Kim*, an adult probationer who had been convicted of a felony, was already subject to these statutes, the appellate court there viewed the counterpart ban imposed as a condition of his probation as merely "implementing" the statutory scheme. The court then analyzed cases applying these statutes, and concluded

[7] Those prohibitions are now contained in Penal Code sections 29800, subdivision (a)(1) and 30305, subdivision (a)(1).

12

that "[i]mplicit in the crime of possession of a firearm is that a person is aware both that the item is in his or her possession and that it is a firearm. We believe the same is true of a probation condition prohibiting possession of a firearm, and, by logical extension, possession of ammunition." (*Kim, supra,* at p. 846.) Because the "conduct proscribed by [Penal Code former] sections 12021 and 12316 is coextensive with" the challenged probation condition, the court held, the "probation condition need not be modified to add an explicit knowledge requirement." (*Kim, supra,* at p. 847.)

That was not the situation we addressed in *Kevin F.* There, a juvenile probationer was found in section 602 proceedings to have committed robbery and was placed on probation. (*Kevin F., supra,* 239 Cal.App.4th at p. 356.) He was subject to a statutory ban on firearm possession until age 30. (Pen. Code, § 29820, subds. (a)–(c); Welf. & Inst. Code, § 707, subd. (b)(3).) But the ban on weapons possession in his probation conditions went far beyond this statutory prohibition and covered conduct that, for him, was otherwise lawful. It was an extraordinarily broad prohibition, covering a wide range of conduct that might be considered innocent (" 'You're not to possess any toys that look like weapons' ") or that was difficult to know was wrongful (" 'You are not to possess anything that . . . someone else might consider to be a weapon' "). (*Id.* at pp. 356–357.) Because of the sheer breadth of the ban, we modified it to require the addition of express scienter language.[8] (*Kevin F., supra,* 239 Cal.App.4th at pp. 365–366.)

In this case, by contrast, the Alcohol, Drugs and Smoking Ban reinforces otherwise applicable statutory proscriptions. *Rodriguez* applied *Kim* to a prohibition on use and possession of controlled substances even though the probation condition at issue did not, in express terms, incorporate specific sections of the Controlled Substances Act.

---

[8] To the extent it covered a wide range of undefined objects and things that it was lawful for the minor to own (see *Kevin F.*, *supra*, 239 Cal.App.4th at p. 360, fn. 4), the challenged condition "impact[ed] the constitutional right to possess property." (*People v. Contreras, supra,* 237 Cal.App.4th at p. 888; see *Freitas*, *supra*, 179 Cal.App.4th at p. 751; Cal. Const., art. I, § 1.)

We take the same approach here. When read against the backdrop of applicable law, the meaning of the prohibition on possession and use of "alcoholic beverages" and "controlled substances" is plain enough without an express scienter requirement. (*Rodriguez*, *supra*, 222 Cal.App.4th at p. 593; *Kim*, *supra*, 193 Cal.App.4th at p. 847.) It may be, to be sure, that the anti-smoking clause of the Alcohol, Drugs and Smoking Ban—barring Minor from possessing or using "tobacco, including electronic cigarettes"—goes beyond otherwise applicable law. When the June 15 Dispositional Order issued, e-cigarettes were not defined as regulated "tobacco products" in Penal Code section 308 and the STAKE Act, and Minor had turned 18 by then. But even assuming that, absent the Alcohol, Drugs and Smoking Ban, Minor was free to buy and smoke cigarettes and e-cigarettes when the June 15 Dispositional Order issued, we are satisfied there is no due process problem here. The anti-smoking clause of the Alcohol, Drugs and Smoking Ban is phrased in terms that are specific and clear enough so that an express scienter requirement is not needed.[9]

Minor relies heavily on *Freitas*, *supra*, 179 Cal.App.4th 747, a case involving a probation condition prohibiting "possess[ion,] . . . custody or control" of "firearms or

_____

[9] In her zeal to argue the irreconcilability of cases adopting the implied scienter analysis of *Moore*, *supra*, 211 Cal.App.4th 1179, on the one hand, and cases in line with *Kevin F.*, *supra*, 239 Cal.App.4th 351, on the other hand, the Attorney General does not distinguish sharply between two related but distinct points in the logic of *Moore*—first, that the more clearly a probation condition defines proscribed conduct, the less need there is for an express scienter requirement (*Moore*, *supra*, 211 Cal.App.4th at p. 1186 ["the weapons prohibition here is sufficiently precise to inform Moore of what is required of him, and for a court to determine whether the condition has been violated"]), and second, that the standard of "willfulness" in probation violation proceedings makes it unnecessary to add an express scienter requirement (*ibid.* ["Moore's concern that without the express addition of a scienter requirement he could be found in violation of probation for unknowing possession appears unfounded. As the People point out, a trial court may not revoke probation unless the defendant willfully violated the terms and conditions of probation."]). Although we part company with *Moore* on the latter point for the reasons explained at length in *Kevin F.*, *supra*, 239 Cal.App.4th at pp. 357–362, we agree with the initial premise of its logic. It is unnecessary to add an express scienter requirement to a prohibition that is stated with reasonable clarity. The problem with the ban on weapons possession in *Kevin F.* was that it was inherently ambiguous. (*Ibid.*)

ammunition." (*Id*. at p. 750.) In that case, a panel of the Third District Court of Appeal required the addition of express scienter language to cure facially unconstitutional vagueness. Minor points to the observation in *Freitas* that "without the addition of a scienter requirement, [the probationer] could be found in violation of probation if he merely borrows a car and, unbeknownst to him, a vehicle owner's lawfully obtained gun is in the trunk." (*Id.* at p. 752.) We do not think an imagined scenario in which a probationer unknowingly comes into possession of some prohibited item warrants the addition of an express scienter requirement in all circumstances. The holding in *Freitas* is not that broad when read with its facts in mind. There, the language of the condition at issue included constructive possession wording ("possess[ion,] . . . custody or control"). (*Id*. at p. 750.) Evidently, the *Freitas* court saw a need to mitigate the potential that that particular language might have the effect of charging the probationer with the knowledge and responsibility of third parties in some circumstances. None of the probation conditions at issue in this appeal includes constructive possession language presenting any similar concern.

2. The Drug Paraphernalia Ban

The Drug Paraphernalia Ban provides that "[t]he Minor shall not possess any drug paraphernalia." As we shall explain, this condition does not simply implement a statutory prohibition. And in light of the breadth of the Drug Paraphernalia Ban, we conclude that the addition of an express knowledge requirement is necessary.

Under Health and Safety Code section 11014.5, subdivision (a), " 'Drug paraphernalia' means all equipment, products and materials of any kind which are designed for use or marketed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance . . . ." The statute provides a nonexclusive list of items that qualify as drug paraphernalia, and specifies factors a court or other authority may consider in

15

determining whether an object is drug paraphernalia.[10] (Health & Saf. Code, § 11014.5, subds. (a), (c).)

Other provisions of the Health and Safety Code prohibit possession of such items under certain circumstances, but those provisions are not coextensive with the prohibition on simple possession of all "drug paraphernalia" set forth in the Drug Paraphernalia Ban. First, Health and Safety Code section 11364.7, subdivision (a) criminalizes possession of "drug paraphernalia," but it also requires a further specific intent to "deliver, furnish, or transfer." It provides: "Except as authorized by law, any person who delivers, furnishes, or transfers, *possesses with intent to deliver, furnish, or transfer*, or manufactures with the intent to deliver, furnish, or transfer, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance, except as provided in subdivision (b), in violation of this division, is guilty of a misdemeanor." (Italics added.)

Second, Health and Safety Code section 11364, subdivision (a) prohibits possession of some, but not all, types of drug paraphernalia. That subdivision states that "[i]t is unlawful to possess an opium pipe or any device, contrivance, instrument, or paraphernalia used for unlawfully *injecting or smoking* (1) a controlled substance specified in subdivision (b), (c), or (e) or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, specified in subdivision (b) or (c) of Section 11055, or specified in paragraph (2) of subdivision (d) of Section 11055, or (2) a controlled substance that is a narcotic drug classified in Schedule III, IV, or V." (Italics added.) Not every drug or controlled substance is covered by Health and Safety Code section 11364. For example, marijuana

---

[10] Health and Safety Code section 11364.5 (which generally requires any business that offers or displays "drug paraphernalia" to exclude persons under 18 years of age) sets forth a similar, but not identical, definition of drug paraphernalia that applies to the term "[a]s used in this section." (Health & Saf. Code, § 11364.5, subds. (d)–(e).)

16

is not one of the substances listed in Health and Safety Code section 11364, subdivision (a). (See Health & Saf. Code, § 11054, subd. (d)(13) [marijuana].) An appellate court has held that the possession of a device for smoking marijuana, without more, is not a crime in California. (*In re Johnny O.* (2003) 107 Cal.App.4th 888, 897.) Moreover, Health and Safety Code section 11364, subdivision (a) does not cover paraphernalia used for introducing a drug into a human body by means other than injecting or smoking, such as snorting or inhaling. Because Health and Safety Code sections 11364 and 11364.7 do not prohibit simple possession of all drug paraphernalia, "[t]his is not a situation in which it is possible to infer that a probation condition has the same implicit mental element as the penal statutes it was written to enforce." (*People v. Carreon* (2016) 248 Cal.App.4th 866, 882 [distinguishing *Kim* and *Rodriguez*].)

Instead, the Drug Paraphernalia Ban is similar to the weapons prohibition at issue in *Kevin F.*, which provided in part that the probationer could not "possess anything that [he] could use as a weapon." (*Kevin F.*, *supra*, 239 Cal.App.4th at pp. 357, 360.) That condition was "broad enough to include any object that *could* injure someone, even an ordinary household object, regardless of [the probationer's] intent in possessing it." (*Id.* at p. 360.) In light of the wide array of items that could be considered weapons, we concluded addition of an express knowledge requirement (specifying in part that the minor could not knowingly possess anything that he intended to use as a weapon) was necessary to provide adequate notice of the prohibited conduct and to protect against unwitting violations. (*Id.* at pp. 360–361, 365–366.) We concluded "the probationer must engage in the proscribed conduct *knowingly* (i.e., with actual intent and understanding that he possesses something constituting a weapon)." (*Id.* at p. 365.)

The Drug Paraphernalia Ban here is similarly open-ended. Common household items that are needed for or associated with drug use arguably could constitute "drug paraphernalia," and thus could fall within the Drug Paraphernalia Ban even if Minor possessed them for legitimate purposes and was ignorant of their use as drug paraphernalia. As noted, a broad prohibition on Minor's possession of ordinary objects that it is lawful for her to own "impacts the constitutional right to possess property."

17

(*People v. Contreras, supra,* 237 Cal.App.4th at p. 888.) For these reasons, we conclude it is necessary to modify the Drug Paraphernalia Ban to prohibit only knowing conduct—Minor "must engage in the proscribed conduct *knowingly* (i.e., with actual intent and understanding that [she] possesses something constituting [drug paraphernalia])." (See *Kevin F.*, *supra*, 239 Cal.App.4th at p. 365.) We will modify the Drug Paraphernalia Ban to state: "The Minor shall not possess any item that she knows is drug paraphernalia." Under this revised condition, if Minor possesses a common item that has a legitimate purpose but she is unaware it is intended for use as drug paraphernalia by someone, she will not be in violation of the condition.

### 3. The Poppy Seed Products Ban

The Poppy Seed Products Ban bars Minor from "consum[ing] any poppy seed products or other substances known to adulterate or interfere with chemical testing." We see no need for an express scienter requirement here.

We are satisfied that the meaning of this clause is sufficiently comprehensible for an average 18-year-old bound by it to understand. Reading the Poppy Seed Products Ban in its proper context—together with the probation condition subjecting Minor to drug testing on demand (a condition she does not challenge), and keeping in mind the references to "adulterat[ing] or interfer[ing] with chemical testing"—it is clearly designed to *protect* Minor from violating her probation based on false positive drug test results. The wording could have been more precise, since the person to whom the effect of poppy seed products or other adulterating foods on drug testing must be "known" is not clear. But despite that ambiguity, we think the meaning of the prohibition is clear enough to avoid due process concerns. In conducting a review for facial vagueness, we do not require optimum precision and exactitude. "Condemned to the use of words, we can never expect mathematical certainty from our language." (*Grayned v. City of Rockford* (1972) 408 U.S. 104, 110.)

18

Given its context and purpose (see *Lopez*, 66 Cal.App.4th at p. 630), we think the wording of the Poppy Seed Products Ban adequately conveys the message to an ordinary 18-year-old who knows she is subject to chemical drug testing that, for her own protection, it is her responsibility to find out what kinds of foods might cause false positive drug test results and to avoid those foods.

### 4. The Data Deletion Tools Ban

In an apparent effort to strengthen the electronic search condition by ensuring preservation of all of Minor's electronic communications, the juvenile court ordered that "Minor shall not possess or utilize any program or application, on any electronic data storage device, that automatically or through a remote command deletes data from that device." We are constrained to conclude that this clause is unconstitutionally vague on its face, and that the addition of an express knowledge requirement will not cure the defect.

Because all computing devices are "electronic data storage devices" and virtually all software programs available to consumers for those devices have the capability to "automatically" delete data—which is the purpose of the "delete" key on any keyboard and the "delete" command in any software application—the Data Deletion Tools Ban, plainly read, bans Minor from using or possessing any smartphone or computer. We doubt that is what the court intended, but it is the unavoidable meaning of the language used. Whether this infirmity is characterized as a problem of vagueness or of overbreadth, the Data Deletion Tools Ban, as phrased, fails to give fair warning of the scope of its prohibition. (See *Victor L.*, *supra*, 182 Cal.App.4th at p. 926 [striking probation condition barring all access to Internet enabled computers on vagueness grounds, since the ban "could ensnare a minor in a claimed probation violation even if he were engaged in completely innocent and legitimate use of a computer for scholarly or job-related purposes"]; *In re Stevens* (2004) 119 Cal.App.4th 1228, 1239 ["the broad prohibition on use of the computer and Internet bore no relation to Stevens's conviction

19

for child molestation and imposed a greater restriction of his rights than was reasonably necessary to accomplish the state's legitimate goal"].)

Perhaps the Data Deletion Tools Ban was designed to ban Minor from using apps, such as Snapchat, which allow electronic communications to be sent, received, and automatically deleted after they are read, thus effectively destroying all evidence that any communications occurred. Perhaps it was aimed at remote "erase" capability, which is available on many modern, cloud-enabled handheld devices such as iPhones to delete data from lost or stolen phones. Or perhaps the court had some other specific tool in mind. Rather than modify this condition on appeal in an effort to save it based on surmise, we think the better course is to vacate it and invite modification on remand by using examples designed to narrow it to its intended purpose. (See *Lopez*, *supra*, 66 Cal.App.4th at p. 630 [" 'A contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness.' "].)

### 5. The Electronic Monitoring Condition

The Electronic Monitoring Condition requires Minor to "obey all rules and regulations of the Electronic Monitoring Program" and grants to Minor's probation officer discretion to extend the duration of electronic monitoring and to detain Minor temporarily at Girls Camp for "violating the . . . Electronic Monitoring Agreement." Nowhere are the referenced "rules and regulations" set forth or summarized. This condition, too, is unconstitutionally vague on its face, and the addition of an express knowledge requirement will not cure the defect. Nothing on the face of the June 15 Dispositional Order, in the transcript of the hearing leading to its imposition, or anywhere else in the record, indicates that Minor was apprised of the "rules and regulations" of the Electronic Monitoring Program, or that steps were taken to make sure she understands those rules. There are references to a contract (the "Electronic Monitoring Agreement"), but these references are without content and provide no guidance about where to find whatever standards of conduct that instrument may impose.

20

The Attorney General asks that we presume the trial court fulfilled its duty to ensure Minor was aware of her obligations of compliance. But this appeal raises claims of facial vagueness, our review is de novo, and there is nothing in the challenged probation condition or anywhere else in the June 15 Dispositional Order to justify indulging such a presumption. Here, at least on the face of the challenged order, one can only guess at what the "rules and regulations" of the Electronic Monitoring Program may be. The vagueness problem is exacerbated by the broad delegation of authority to Minor's probation officer. "A [probation] condition with no core meaning . . . cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, i.e., the delegation of 'basic policy matters to policemen . . . for resolution on an ad hoc and subjective basis.' " (*Loy*, *supra*, 237 F.3d at p. 266.)[11]

Because the Electronic Monitoring Condition, on its face, is standardless, without content and potentially exposes Minor to arbitrary deprivations of her liberty, we find it to be unconstitutionally vague. We will modify it to specify that Minor shall "obey all

[11] The Attorney General argues that Minor waived any right to appeal the Electronic Monitoring Condition because it was originally imposed at a hearing on September 22, 2014 and Minor failed to supply a transcript of that hearing in the record. We are not persuaded. Minor appeals from the June 15 Dispositional Order, mounts a facial challenge to the language of probation conditions imposed in that order, and the record she supplied to us—which includes the June 15 Dispositional Order itself and enough of the remainder of the record to show the procedural context surrounding that order—is sufficient to satisfy her burden of furnishing an adequate record supporting her appeal, as she framed it. To the extent anything in the September 22, 2014 hearing transcript might have undercut Minor's argument that her claims of vagueness are susceptible of resolution facially—the Attorney General posits, for example, that there might be something in that transcript showing that the court explained the terms of the Electronic Monitoring Condition then—that transcript could have been supplied by the Attorney General by counter-designation or request to augment, to show that Minor's vagueness challenges can only be resolved by reference to "the particular sentencing record developed in the trial court . . . ." (*Sheena K., supra,* 40 Cal.4th at p. 887.) The Attorney General made no such counter-designation or request for augmentation.

rules and regulations of the Electronic Monitoring Program, as posted on the probation department's website, as approved by the court, and as explained to her by her probation officer." (See *Rodriguez*, *supra*, 222 Cal.App.4th at p. 586 ["probation conditions 'need not be spelled out in great detail in court as long as the defendant knows what they are; to require recital in court is unnecessary in view of the fact the probation conditions are spelled out in detail on the probation order,' " or incorporated therein by reference, " 'and the probationer has a probation officer who can explain to him the contents of the order' "].)

### 6. The School Attendance Requirement

The School Attendance Requirement requires Minor to "attend school regularly without tardiness or unexcused absence . . . and to . . . behave at all times while in school." Minor contends the word "regularly" renders this condition so ambiguous and susceptible of multiple meanings that it cannot be understood by an average person. She asks that we modify it to make it more precise, replacing "regularly" with language requiring that she "attend school every day that school is in session without tardiness or unexcused absence." We decline to do so.

This condition does not implicate any "important issue of constitutional law or a substantial right." (*Sheena K.*, *supra*, 40 Cal.4th at p. 887, fn. 7.) Absent a chilling effect on constitutionally protected conduct, a broadly stated prohibition phrased in inexact terms may in some instances be perfectly appropriate to use, by design, with the aim of ensuring that a probationer errs on the side of compliance. We cannot say that that approach is improper here. The manifest purpose of the School Attendance Requirement is to prohibit truancy. Read with that purpose in mind, we think its phrasing is clear enough for the target audience, an average juvenile of Minor's age, to understand.

22

### III. CONCLUSION AND DISPOSITION

The conditions of probation imposed on Minor in the June 15 Dispositional Order are modified as follows:

1. The condition that Minor "shall not possess any drug paraphernalia" is modified to state that Minor "shall not possess any item that she knows is drug paraphernalia."

2. The condition that "Minor shall not possess or utilize any program or application, on any electronic data storage device, that automatically or through a remote command deletes data from that device" is vacated, subject to reinstatement in narrower form should the juvenile court wish to reinstate it after further consideration.

3. The condition that Minor shall "obey all rules and regulations of the Electronic Monitoring Program" is modified to provide that Minor shall "obey all rules and regulations of the Electronic Monitoring Program, as posted on the probation department's website, as approved by the court, and as explained to her by her probation officer."

Except as so modified, the June 15 Dispositional Order is affirmed.

_____
Streeter, J.

We concur:

_____
Ruvolo, P.J.

_____
Rivera, J.

23

Trial Court:    San Mateo County Superior Court

Trial Judge:    Hon. Clifford V. Cretan

Counsel:

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano, Supervising Deputy Attorney General, Huy T. Luong, Deputy Attorney General for Plaintiff and Respondent.